UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CRAWFORD AND THADDEUS CORLEY,<br><br>    Plaintiffs,<br><br>-against-<br><br>ANDREW CUOMO, as Governor of the State of New York, in his official capacity; BRIAN FISCHER, Commissioner of Department of Corrections and Community Supervision, in his official capacity; Superintendent WILLIAM P. BROWN, in his personal and official capacities; Superintendent WILLIAM LARKIN, in his official capacity; Corrections Officer SIMON PRINDLE; and JOHN DOE Corrections Officers 1-8,<br><br>    Defendants. | 9:13-CV-0406<br>NAM/CFH |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Law Office of Zachary Margulis-Ohnuma
260 Madison Avenue, 17th Fl.
New York, NY 10016
(212) 685-0999
zach@zmolaw.com

Perlmutter and McGuinness, P.C.
260 Madison Avenue, 17th Fl.
New York, NY 10016
(212) 679-1990
adp@pmlawnyc.com

*Attorneys for Plaintiffs James Crawford and Thaddeus Corley*

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 2

I.  Defendants Prindle and Brown are Not Entitled to Qualified Immunity Because It Was Clearly Established When Prindle Sexually Abused the Plaintiffs that His Conduct Violated the Eighth Amendment ................................................. 2

II. Plaintiffs Retain Standing Against Defendants Because the Violation Committed Is Capable Of Repetition Against The Plaintiffs .................................................... 6

CONCLUSION ............................................................................................................................... 8

## ARGUMENT

**I. Defendants Prindle and Brown are Not Entitled to Qualified Immunity Because It Was Clearly Established When Prindle Sexually Abused the Plaintiffs that His Conduct Violated the Eighth Amendment**

Officer Prindle claims that his sexual abuse of the two plaintiffs was shielded, as a matter of law, by the doctrine of qualified immunity. *See* Dkt. No. 22: 9/22/15 Memorandum of Law in Further Support of Defendants' Motion to Dismiss (hereinafter "Mem.") at 7-12. He is wrong.

A government official is not entitled to qualified immunity if the official "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). "Officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Rogoz v. City of Hartford*, 796 F.3d236, 247, *citing Hunter v. Bryant*, 502 U.S. 224 (1991). Qualified immunity is an affirmative defense with the burden of proof resting on the defendant. *Rogoz v. City of Hartford*, 796 F.3d at 247. The doctrine "strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Wyatt v. Cole*, 504 U.S. 158, 166 (1992). Designed to shield government officials from civil liability unless they are plainly incompetent or knowingly violate the law, *Malley v. Briggs*, 475 U.S. 335, 341 (1986), qualified immunity "acts to safeguard government, and thereby to protect the public at large, not to benefit its agents." *Wyatt v. Cole*, 504 U.S. at 166.

Here, the Complaint adequately alleges that (1) Officer Prindle knowingly violated the law by molesting Mr. Crawford and Mr. Corley, and (2) Superintendent Brown knowingly violated the law by permitting him to do so. The defendants' sole claim of qualified immunity is their argument that the alleged conduct did not violate clearly established law at the time it was committed because, they submit, the right to be free from sexual abuse was not clearly

established in 2011. *See* Mem. at 7-8. In the Second Circuit, a "right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.' *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). 'The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct.' *McCullough v. Wyandanch Union Free Sch.*, 187 F.3d 272, 278 (2d Cir. 1999)." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (denying qualified immunity at pleading stage); *see also Sydney v. Wilson*, 2007 WL 4208626 at *8-9 (S.D.N.Y. Nov. 21, 2007) (right to be free from excessive force is clearly established). In an "obvious case," the fact that a particular punishment has not previously been held to violate the Eighth Amendment does not provide qualified immunity: "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (denying qualified immunity where prison officials shackled complainant to a hitching post). Defendants point to no case, and we know of none, in which the Second Circuit or the Supreme Court has held that rulings of district courts may be relied on to determine whether a right is clearly established or not when on-point circuit law is controlling.[1]

In this case, qualified immunity does not protect defendant Prindle: a reasonable person would know that sexually abusing an inmate during a pat frisk amounts to cruel and unusual

---

[1] Defendants do cite to two cases that may appear to suggest that lower court opinions can be relevant. *See* Mem. at 10, *citing Vives v. City of New York*, 405 F.3d 115, 118 (2d Cir. 1997) and *Wilson v. Layne*, 526 U.S. 603, 618 (1999). Neither supports the notion that a prison official may look to past district court cases in determining the extent of sexual abuse that may be lawfully inflicted on an inmate. In *Vives* the issue was whether police could lawfully make an arrest based on a state statute that had never been declared unconstitutional, but the district court was prepared to strike down. Some state courts had in fact upheld the statute and the Second Circuit found that the officers were immune from suit because, absent a controlling decision striking down the statute, they were entitled to rely on the presumption that the statute was lawfully enacted. In *Wilson*, the Supreme Court noted a split only among circuit courts, referencing earlier district court cases only in passing.

punishment. The Complaint alleges that in 2011, defendant Prindle sexually abused Mr. Corley and Mr. Crawford while they were incarcerated at Eastern Correctional Facility. In 1997, the Second Circuit held in *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997), that "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Id.* at 861. As the Court of Appeals recognized in this case, fondling an inmate's genitals during a pat frisk is "severe." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) ("The unjustified conduct alleged here is *unquestionably* 'repugnant to the conscience of mankind' and therefore violates the Eighth Amendment.") (emphasis added). The plain language of *Boddie*, announced nearly 15 years prior to Prindle's conduct, put Prindle on notice that sexually abusing an inmate is a constitutional violation.

Moreover, the Second Circuit invoked *Boddie* to determine the specific outcome here. In remanding, the panel stated that *Boddie* "recognized that a single act of sexual abuse may violate the Eighth Amendment if, *as in this case*, it is entirely gratuitous and devoid of penological purpose." *Crawford v. Cuomo*, 796 F.3d at 257 (emphasis added). "Under *Boddie*," the court continued, "no amount of gratuitous or sexually-motivated fondling of an inmate's genitals—even if limited in duration or conducted through the inmate's clothes, as was the case here—is permitted by the Constitution." *Id.* at 258.

Courts "may examine statutory or administrative provisions in conjunction with prevailing circuit or Supreme Court law to determine whether an individual had fair warning that his or her behavior would violate the victim's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433-34 (2d Cir. 2009). Since 1996—the year before *Boddie*—New York state law has criminalized "*any* sexual contact initiated by a prison

4

employee against an inmate." *See Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 238 (S.D.N.Y. 2005), *citing* N.Y. Penal L. § 130.05 (McKinney's 2004 ed.) (*Boddie* established that the sexual assault of a prison inmate by a prison employee serves no legitimate punitive purpose). Furthermore, every state criminalized sexual contact between a corrections officer and an inmate as of May 2006; fourteen of those state laws went into effect after the *Boddie* decision. *See* Gary Hunter, *Vermont, the Last State to Pass Sex Abuse Laws*, Prison Legal News, 32 (March 2007).

In addition to the Second Circuit, many other federal appeals courts held prior to Prindle's abuse of Mr. Corley and Mr. Crawford that sexually abusing an inmate is a constitutional violation. *See Schwenk v. Hartford,* 204 F.3d 1187, 1197 (9th Cir. 2000) ("In the simplest and most absolute terms, the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established . . . and no reasonable prison guard could possibly have believed otherwise."); *Daskalea v. District of Columbia,* 227 F.3d 433, 440 (D.C. Cir. 2000) (affirming prisoner's Eighth Amendment claim after prison guards sexually assaulted her); *Berryhill v. Schriro,* 137 F.3d 1073, 1076 (8th Cir.1998); *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir.1998) ("Clearly plaintiffs' deprivations resulting from the sexual assaults are sufficiently serious to constitute a violation under the Eighth Amendment.").

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). But years prior to Prindle's abuse of Mr. Crawford and Mr. Corley, a trend of statutory and case law, including the *Boddie* decision, swept the country and clearly established that an officer who sexually abuses an inmate violates that inmate's constitutional rights. By 2011, defendant Prindle was on notice that Mr. Crawford and Mr.

Corley had a clearly established constitutional right to be free from Prindle's squeezing, fondling, and roaming of their genitalia for Prindle's own pleasure or to humiliate the plaintiffs. By that time, no officer could reasonably have believed that sexually abusing a prison inmate for his or her own sexual gratification or to humiliate the inmate was a reasonable performance of his or her duties. In 2005, the Southern District aptly observed that "[a] corrections officer who sexually assaults a prison inmate does not mistakenly judge how he should carry out his duties; instead, such conduct blatantly disregards a New York State criminal statute and Second Circuit case law." *Rodriguez v. McClenning*, 399 F.Supp.2d at 238-39. Qualified immunity is an accommodation that permits officials to perform their government functions fully, without fear of suit; it is not designed to protect a government employee who goes beyond that function and abuses his position of authority, as defendant Prindle did here. *See Hunter v. Bryant*, 502 U.S. at 229; *see also Qasem v. Toro*, 737 F.Supp.2d 147, 153 (S.D.N.Y. 2010) ("It is well established that the sexual exploitation of prisoners by prison guards amounts to a constitutional violation").

Similarly, defendant Brown is not entitled to qualified immunity because he unreasonably failed to protect Mr. Crawford and Mr. Corley from sexual abuse at the hands of defendant Prindle despite numerous prior complaints from other inmates reporting similar conduct.

## II. Plaintiffs Retain Standing against Defendants Because the Violation Committed Is Capable of Repetition

Defendants seek to dismiss the fourth cause of action in this case seeking injunctive relief on the basis that there is no ongoing violation of rights because Mr. Corley and Mr. Crawford are no longer incarcerated at Eastern Correctional Facility ("ECF") where defendant Prindle remains employed. Although a case generally is moot where there is no live controversy, the Supreme Court has recognized an exception where conduct is "capable of repetition but evading review." *Murphy v. Hunt,* 455 U.S. 478, 482 (1982). This legal doctrine is comprised of two elements:

"(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* The first element is plainly satisfied as neither Mr. Corley nor Mr. Crawford are presently incarcerated at ECF, where defendant Prindle sexually abused them, because they were released on parole. Defendant Prindle continues to work at the facility.

The second element is also satisfied in this case. The crux of the inquiry is whether the controversy is "*capable* of repetition and not…whether the claimant had demonstrated that a recurrence of the dispute was more probable than not." *Honig v. Doe,* 484 U.S. 305, 320 n. 6 (1988) (emphasis in original). *Lloyd v. City of New York*, 43 F. Supp. 3d 254 (S.D.N.Y. 2014) is directly on point. In that case, inmates at Riker's Island brought suit alleging a First Amendment violation of their religious freedom. The court held that, although some of the plaintiffs were no longer held at Rikers, their claim was not moot because "there is some reason to believe that these Plaintiffs—both of whom testified that their many brushes with the law had led to a considerable number of confinements on Rikers—may someday return to [the jail complex in which they were held], where they will find themselves subject to the same condition of which they here complain." *Lloyd v. City of New York*, 43 F.Supp.3d at 270. The *Lloyd* court denied the defendants' motion to dismiss, finding that plaintiffs retained legally cognizable interests. *Id.*

Similarly here, although Mr. Crawford and Mr. Corley are on parole and are no longer incarcerated at ECF, there is some reason to believe that they might return to ECF and be subjected again to Prindle's sexual abuse. A U.S. Department of Justice Bureau of Justice Statistics study found that, within three years, 49.7% of inmates released in 2005 "either had an arrest that resulted in a conviction with a disposition of a prison sentence or were returned to

7

prison without a new conviction because they violated a technical condition of their release, as did 55.1% of inmates within 5 years of release." Matthew R. Durose, Alexia D. Cooper, and Howard N. Snyder, *Recidivism of Prisoners Released in 30 States in 2005: patterns from 2005 to 2010*, April 2014, at 1, 15.[2] A minor parole violation, another brush with the law, or even a false accusation of crime could return Mr. Crawford or Mr. Corley to ECF, where Prindle remains on duty. *See Lloyd v. City of New York*, 43 F. Supp. 3d at 270. Similarly, based on the allegations in the Complaint, Prindle's conduct appears to be repetitive and compulsive. Therefore, a controversy continues to exist due to the reasonable expectation that Prindle could again sexually abuse Mr. Corley or Mr. Crawford at Eastern Correctional Facility.

## **CONCLUSION**

Since it was clearly established by 2011 that the conduct alleged in the Complaint amounted to a violation of the Eighth Amendment, defendants' motion should be DENIED.

Dated:    New York, New York
          November 16, 2015

                                        Law Office of Zachary Margulis-Ohnuma

                                        By: *Zachary Margulis-Ohnuma*
                                            Zachary Margulis-Ohnuma

                                        260 Madison Avenue, 17th Floor
                                        New York, NY 10016
                                        (212) 685-0999

                                        Perlmutter and McGuinness, P.C.
                                        260 Madison Avenue, 17th Floor
                                        New York, NY 10016
                                        (212) 679-1990

---

[2] The report is available online at http://www.bjs.gov/dcontent/pub/pdf/rprts05p0510.pdf.